IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROBERT JAMES BINDER, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1: 18-cv-00122 (Erie) |
| | ) | |
| v. | ) | UNITED STATES MAGISTRATE JUDGE |
| | ) | RICHARD A. LANZILLO |
| CORRECTIONS OFFICER BAMAUR, | ) | |
| and WARDEN, ERIE COUNTY PRISON, | ) | |
| | ) | |
| Defendants. | ) | MEMORANDUM OPINION ON MOTION |
| | ) | TO DISMISS |
| | ) | |

I.  Introduction and Procedural History

Plaintiff Robert James Binder initiated this civil rights action *pro se* pursuant to 42 U.S.C. § 1983 by filing a Motion for Leave to Proceed In Forma Pauperis on November 28, 2016 in the United States District Court for the Eastern District of Pennsylvania. ECF No. 1. Binder's motion was granted on January 10, 2017 (ECF No. 4) and his Complaint was docketed the same day. ECF No. 5. Binder filed an Amended Complaint (ECF No. 8) on March 28, 2017. Defendants moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(3) and 12(b)(6). ECF No. 5. The motion was granted insofar as the case was transferred to this District on March 27, 2018. ECF No. 19.

Presently pending before the Court is the Defendants' renewed Motion to Dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF No. 25. Binder has filed a Response in opposition. ECF No. 28. On September 25, 2018, this matter was reassigned from United States Magistrate Judge (now United States District Judge) Susan Paradise Baxter to the undersigned. For the reasons set forth below, Defendants' motion will be GRANTED.

1

II.       Factual Background

Binder's pro se Amended Complaint seeks damages for injuries he suffered when he fell out of the top bunkbed while incarcerated in the Erie County Prison. ECF No. 8 at 3.[1] He has sued Corrections Officer Bambaur and the Warden. According to his Amended Complaint, Binder was arrested in Erie, Pennsylvania on December 5, 2015. *Id.* at 12. During intake with a prison nurse, Binder requested he be given a bottom bunkbed due to a prior knee injury and his alcohol detoxification. *Id.* This request was originally granted. *Id.* But after a few days, a corrections officer ordered Binder to use a top bunkbed. *Id.* In mid-December 2015, Binder fell out of the top bunkbed and sustained serious injuries. *Id.* Binder was transferred from the Erie County Prison to the Berks County Prison in Leesport, Pennsylvania on January 22, 2016. *Id. See also* ECF No. 19, at 1 n.1.

Binder alleges that Bambaur "was negligent by not verifying [his] need for bottom bunk status or sending [him] to medical to verify the need," and the Warden "was negligent in not establishing policies regarding bottom bunk status consistent with inmate safety." *Id.* at 1.

III.     Exhaustion of Administrative Remedies

The Defendants argue that their motion to dismiss should be granted because Binder failed to comply with the exhaustion requirement of the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), which requires prisoners, as that term is defined in the statute, to exhaust

---

[1] Pro se pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. *Boag v. MacDougall*, 454 U.S. 364 (1982); *United States ex rel. Montgomery v. Brierley*, 414 F.2d 552, 555 (3d Cir. 1969) (petition prepared by a prisoner may be inartfully drawn and should be read "with measure of tolerance"). Under our liberal pleading rules, a district court should construe all allegations in a complaint in favor of the complainant. *Gibbs v. Roman*, 116 F.3d 83 (3d Cir. 1997), *overruled on other grounds by Abdul-Akbar v. McKelvie,* 239 F.3d 307, 311 (3d Cir. 2001); *see e.g., Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir. 1996) (discussing Fed. R. Civ. P. 12(b)(6) standard); *Markowitz v. Ne. Land Co.*, 906 F.2d 100, 103 (3d Cir. 1990) (same). Because Plaintiff is a pro se litigant, this Court may consider facts and make inferences when appropriate.

their administrative remedies prior to filing suit under 42 U.S.C. § 1983 with respect to prison conditions. Specifically, the PLRA provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title by a prisoner confined in jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

*Id.* The United States Supreme Court has held "that the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes." *Porter v. Nussle*, 534 U.S. 516 (2002). Furthermore, exhaustion is mandatory and no case may be brought until the inmate-plaintiff has exhausted all available administrative remedies. *See Booth v. Churner*, 532 U.S. 731, 739 (2001). Federal courts are barred from hearing a claim if a plaintiff has failed to exhaust all the available remedies prior to filing the action. *See Nyhuis v. Reno*, 204 F.3d 65, 73 (3d Cir. 2000) (by using language "no action shall be brought," Congress has "clearly required exhaustion").

The PLRA also mandates that inmates "properly" exhaust their administrative remedies before filing suit in federal court. *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). Proper exhaustion requires the prisoner to identify the issue or claim and future defendant in the operative grievance or else the grievance is procedurally defective as to that issue, claim or future defendant. *See Spruill v. Gillis*, 372 F.3d 218, 234 (3d Cir. 2004). Additionally, "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." *Woodford*, 548 U.S. at 90-91. Such requirements "eliminate unwarranted federal-court interference with the administration of prisons, and thus seek[ ] to 'affor[d] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.'" *Id.* at 93 (quoting *Porter*, 534 U.S. at 525).

Importantly, the exhaustion requirement may not be satisfied "by filing an untimely or otherwise procedurally defective . . . appeal." *Id*. at 83; *see also Spruill*, 372 F.3d at 228-29 (utilizing a procedural default analysis to reach the same conclusion). Courts have concluded that inmates who fail to fully, or timely, complete the prison grievance process are barred from subsequently litigating claims in federal courts. *See, e.g., Booth*, 206 F.3d 289; *Bolla v. Strickland*, 304 Fed. Appx. 22 (3d Cir. 2008); *Jetter v. Beard*, 183 Fed. Appx. 178 (3d Cir. 2006).

No analysis of exhaustion may be made absent an understanding of the administrative process available to state inmates. "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.' The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirement, and not the PLRA, that define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007).

The Erie County Prison's Grievance procedures, as set forth in the Inmate's Handbook, provide as follows:

> GRIEVANCES
>
> The Inmate Grievance Procedure is an internal administrative method for the resolution of formal complaints and the identification of potentially problematic management areas. It is designed to supplement, not replace, the informal communication process or disciplinary procedures as described in this handbook. If you feel you have a complaint but are unsure of how to proceed we request that you first attempt to resolve your concerns with a housing unit officer or other appropriate staff member. The officer or staff member may be able to address and/or resolve the situation, concern, or complaint to your satisfaction before it becomes a larger issue.
>
> Not every complaint is a grievance. A grievance must meet the guidelines established and be submitted according to the

procedures below. A grievance may not be filed simply because you disagree with a staff member's decision or instructions. Formal grievances and less formal incidents, problems, or complaints which do not meet the grievance guidelines below should first be brought to the appropriate staff in an attempt to informally resolve. The processing and handling of formal internal grievances is the mechanism through which you may seek formal review of a grievance which relates to any aspect of your imprisonment if less formal communication procedures have not resolved the matter and the grievance is submitted according to the guidelines and procedures listed below.

Grievance Guidelines

A grievance may be filed to:

Report an alleged violation of civil, constitutional or statutory right;
Report an alleged violation of prison policy;
Report an alleged criminal or prohibited act by a staff member;
Report an alleged condition existing within the prison that creates an unsafe or unsanitary;
living condition;
To appeal a decision by the disciplinary hearing officer;

Steps of the Grievance Procedure

Filing of Grievance:

An inmate may file a grievance only for himself. However, an inmate may assist another inmate in filing of grievance.
Only one (1) grievance may be filed relating to a single incident or item of concern.
An inmate may withdraw a previously filed grievance at any time.
No staff member may retaliate against an inmate filing or withdrawing a grievance.

Initiation of Grievance:

Once an inmate initiates the grievance process, review of the grievance shall occur automatically without interference by administrators or employees of the Erie County Department of Corrections.

Forms: Inmates should first attempt to verbally resolve grievances, incidents, problems, or complaints through their housing unit staff.

If the problem cannot be resolved informally, the inmate may file a standard written grievance within fifteen (15) days after the potentially grievable event has occurred. The grievance should be filed with the inmate's counselor first on a form provided for that purpose. The forms are available in each housing unit (See Grievance Form).

Initial Processing

Grievance forms will be accepted by the inmate's counselor. The initial counselor who receives the grievance shall review the grievance and/or record:

1. An assigned grievance number, date and time of occurrence, the grievance type (name of complaint), response due date.
2. Determine whether the grievance: states an emergency situation, or is inappropriately filed, or should be processed within normal guidelines as stated herein
3. The counselor will note one of the above on the grievance from and submit the typed copy to the Deputy Warden for review. (If an emergency situation is declared by the grievant but it is not determined as such by the inmate's counselor and unit/zone manager, the grievance will be processed within the time limits indicated in this policy. Should the inmate's counselor or a unit/zone manager determine an emergency situation does exist, the grievance will be immediately forwarded to the Shift O.I.C. who will immediately notify the grievant and advise what action is being taken).
4. The counselor will submit the original white copy to the Deputy Warden and return the original yellow copy to the inmate.
5. The Deputy Warden will review/investigate the grievance and upon completion will record the findings after an investigation, return any inappropriately filed grievances or one that cites a nongrievable issue to the inmate with an explanation for its return.

Initial Decision

Within twenty (20) days after filing (or less, if required in emergency situations only) every grievant shall receive a written response to his or her grievance signed by a designated staff

> member. In cases where a longer period of time is required for a
> response or for resolution of the problem, the grievant shall be
> notified of the reason for the delay.
>
> Appeal
>
> Expeditious processing of grievances at each level of decision-
> making is essential.
> Responses shall be made within the fixed lime limits as stated at
> each level of decision.
> If after being responded to by the Deputy Warden, the inmate is
> not satisfied, he or she may appeal within live (5) working days to
> the Warden who will attempt to resolve the matter or assign a staff
> member lo do so. The Warden shall make a determination on the
> appeal and will reply to the inmate within. ten (10) working days.
> The Warden's decision will be final.
> The exception to this will be in disciplinary cases. The reply will
> be in writing from a Shift Captain to the inmate and will either
> uphold the previous decision or state specific reasons for not
> upholding the decision. An appeal may be filed to the Deputy
> Warden of Security.
> The decision of the Deputy Warden of Security will be final.

ECF No. 25-3, at 4-6.

Defendants ask that the Court consider an affidavit of the Deputy Warden of the Erie County Prison in deciding their motion to dismiss. The affidavit has been filed as an exhibit in support of the motion to dismiss and, as such, is a matter outside of the pleadings. *See* ECF No. 25-2. In such cases, where the Court receives matters outside the pleadings in support of a potentially dispositive motion, a court may convert a motion to dismiss into a motion for summary judgment. Rule 12(d) of the Federal Rules of Civil Procedure specifically provides for such conversion as follows:

> If, on a motion ... to dismiss for failure of the pleading to state a
> claim upon which relief can be granted, matters outside the
> pleading are presented to and not excluded by the court, the motion
> shall be treated as one for summary judgment and disposed of as
> provided for in Rule 56, and all parties shall be given reasonable
> opportunity to present all material made pertinent to such a motion
> by Rule 56.

7

These requirements ensure "that the motion is governed by the rule specifically designed for the fair resolution of the parties' competing interests at a particular state of the litigation." *Payne v. Kabilko*, 2018 WL 2771583, at *2 (M.S. Pa. Apr. 17, 2018) (citing *Global Network Communications, Inc. v. City of N.Y.*, 458 F.3d 150, 155 (2d Cir. 2006)).

Moreover, a district court must provide sufficient notice of the conversion and allow the parties a reasonable opportunity to submit materials to support or oppose summary judgment. *Hilfirty v. Shipman*, 91 F.3d 573, 578 (3d Cir. 1996) (quoting *Rose v. Bartle*, 871 F.2d 331, 342 (3d Cir. 1989)). Such notice must be unambiguous, it must "fairly apprise" the parties of the court's intent to convert the motion to dismiss to a motion for summary judgment, and it should be expressly provided by the court. *In Re Rockefeller Ctr. Prop., Inc. Sec. Litig.*, 184 F.3d 280, 288 (3d Cir. 1999). Here, the Court provided such notice to all parties. *See* ECF No. 27. Therefore, this motion is now ripe for consideration as a motion for summary judgment.

Rule 56 of the Federal Rules of Civil Procedure governs motions for summary judgment and provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (a). When applying this standard, the court must examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. *Alexander v. Campbell*, 2014 WL 655500 at *3 (W.D. Pa. Feb. 20, 2014) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986); *Andreoli v. Gates*, 482 F.3d 641, 647 (3d Cir. 2007); *UPMC Health System v. Metropolitan Life Ins. Co.*, 391 F.3d 497, 502 (3d Cir. 2004). The burden then shifts to the nonmovant to come

forward with specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(e); *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 460–461 (3d Cir. 1989) (the nonmovant must present affirmative evidence-more than a scintilla but less than a preponderance-which supports each element of his claim to defeat a properly presented motion for summary judgment). The non-moving party must go beyond the pleadings and show specific facts by affidavit or by information contained in the filed documents (*i.e.*, depositions, answers to interrogatories and admissions) to meet his burden of proving elements essential to his claim. *Celotex*, 477 U.S. at 322. *See also Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001). The non-moving party "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue." *Garcia v. Kimmell*, 2010 WL 2089639, at *1 (3d Cir. 2010) (quoting *Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005)). When considering a motion for summary judgment, the Court is not permitted to weigh the evidence or to make credibility determinations but is limited to deciding whether there are any disputed issues and, if there are, whether they are both genuine and material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

In support of their argument that Binder has failed to exhaust his administrative remedies, Defendants have submitted an Affidavit of Deputy Warden Michael Holman. ECF No. 25-2. Holman declares, in pertinent part:

> 3. I have reviewed the prison records of Robert James Binder with respect to his commitment at the Erie County Prison beginning on or about December 4, 2015 through January 21, 2015.
>
> 8. Attached to the Defendant's Motion to Dismiss in the above captioned matter are the cover page, index and pages 41-43 of the Erie County Prison Inmate Handbook (2012) which explains the prison's grievance procedure.

9

9. The Prisoner's grievance procedure states in pertinent part:

    i. A grievance may be filed to:
    ii. Report an alleged violation of civil, constitutional, or statutory right.
    iii. Report an alleged violation of prison policy.
    iv. Report an alleged criminal or prohibited act by a staff member.
    v. Report an alleged condition existing within the prison that creates an unsafe or unsanitary living condition.
    vi. To appeal a decision by the disciplinary hearing officer.

10. Robert James Binder was familiar with the prison's grievance procedure and was given a copy of the Erie County Inmate Handbook shortly after his commitment.

19. Inmate Bender [sic] did not file a grievance at the conclusion of his original Special Needs Medical Treatment Plan on December 10, 2015 nor did he file a grievance as a result of the December 17, 2015 fall from the top bunk.

ECF No. 25-2, at ¶¶ 3. 8-10, 19.

At the outset, the Court observes that Binder was not transferred to the Berks County Prison until January 22, 2016. That gave Binder more than a month after his fall to avail himself of Erie County Prison's grievance procedures. Further, Binder has not filed anything to contest or contradict Holman's affidavit, despite being provided with an opportunity to do so. He does make the unsupported allegation in his Complaint that he filed a grievance on December 10, 2016, which his "fiancé has a copy of." ECF No. 8, at 14. This apparently is a reference to the grievance Binder alleges he filed regarding his bunk status, not his fall. *See* ECF No. 8, at 4. But he has not supplemented the record with a copy of this grievance. Moreover, there is no evidence in the record, nor even any allegation by Binder that he filed a grievance regarding his actual fall from the top bunkbed and the injuries he suffered as a result.

10

The Amended Complaint also contradicts itself. Although Binder's Amended Complaint states that he filed a grievance on December 10, 2015, about his bunk status, it later states that he did not file a grievance but instead "talked to . . . CO Bambaur." *Id*. at 4-5. In his response to the Renewed Motion to Dismiss, Binder further states that he "filed two grievances regarding Officer Bambaur moving the Plaintiff to the top bunk . . . [and] the grievances were answered." ECF No. 28, at 1-2. These are but bare assertions, devoid of any further facts or evidence which would call Holman's affidavit into question so as to create a genuine issue of material fact. *See, e.g., Day v. A.T. Santaniello*, 2015 WL 7306447, at *4 (E.D.N.C. Nov. 19, 2015). In short, Binder has not supplemented the record with any documentary evidence supporting his claim that he filed a grievance, "as he must do in order to defeat a well-supported motion for summary judgment." *Woodward v. Bradford Area Regional Medical Center*, 2018 WL 1456500 at *6 (W.D. Pa. March 23, 2018) (citation omitted). Thus, he failed to exhaust his administrative remedies.

IV.     Conclusion

Therefore, the Court concludes that Binder has failed to exhaust his administrative remedies with regard to his claims brought in the Amended Complaint. Accordingly, summary judgment will be **GRANTED** in favor of the Defendants. A final judgment will therefore be entered in favor of Defendants and against Plaintiff Binder by separate Order in accordance with Rule 58 of the Federal Rules of Civil Procedure. Because the Court has determined that Binder failed to exhaust his administrative remedies, it is unnecessary to review the remaining

arguments Defendants raise in their Motion to Dismiss.

An appropriate order will follow.

/s/ Richard A. Lanzillo
RICHARD A. LANZILLO
United States Magistrate Judge

Entered this 13th day of December, 2018.